**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MARGERY McCAUGHAN,** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**BAYER CORPORATION,** )<br>**BAYER CORPORATE AND** )<br>**BUSINESS SERVICES, LLC,** and )<br>**BROADSPIRE MANAGEMENT** )<br>**SERVICES, INC., BROADSPIRE** )<br>**NATIONAL SERVICES, INC.** and )<br>**BROADSPIRE SERVICES, INC.,** )<br>f/k/a **KEMPER SERVICES,** )<br>)<br>Defendants. ) | 2:04cv1401<br>**Electronic Filing** |

MEMORANDUM OPINION

March 22, 2007

**I.    INTRODUCTION**

The above-captioned case involves an appeal by Plaintiff, Margery McCaughan ("McCaughan") from the termination of her long term disability benefits under an employer benefits plan pursuant to the Employee Retirement Security Act ("ERISA"). McCaughan and Defendants, Bayer Corporation, Bayer Corporate and Business Services LLC (collectively "Bayer"), Broadspire Management Services, Inc., Broadspire National Services, Inc. and Broadspire Services, Inc. f/k/a Kemper Services (collectively "Kemper"), filed cross motions for summary judgment which this Court initially denied based on a record the Court deemed insufficient. The parties have since supplemented the record and renewed their motions for summary judgment. .

**II.    STATEMENT OF THE CASE**

A.    Facts

McCaughan was an employee of a predecessor corporation to Bayer. As such, she participated in Bayer's welfare benefits plans providing long- and short-term disability benefits

to qualifying employees. McCaughan began disability leave on March 4, 1983, and initially received short-term disability benefits from Bayer. She began receiving long-term disability benefits on September 2, 1983. The Social Security Administration determined that McCaughan qualified for social security benefits on April 17, 1993. McCaughan has been diagnosed and treated for asthma and depression for many years.

Bayer Corporation is the sponsor and Plan Administrator for the Bayer Corporation Disability Plans including the long-term disability plan at issue here ("Bayer's LTD Plan"). Broadspire Services, Inc., formerly known as Kemper National Services, Inc. ("Kemper"), serves as a third party claims administrator to the Bayer LTD Plan. An appendix to that agreement describes Kemper's fee schedule which is based on the number of claims reviewed and the complexity of review required for each claim; Kemper's fees are not influenced by the number of claims it "approves."

Bayer funds a Trust for payment of benefits to plan participants. The Trust is administered by Mellon Bank, N.A. pursuant to a Trust Agreement attached as Exhibit F to Bayer's Administrative Record. Disability benefits under the Plan are paid out of the Trust fund, which is pre-funded to cover both present and future disability claims.

The Bayer LTD Plan provides short-term disability benefits for the first twenty-six weeks of a participant's disability. After the initial twenty-six week period, the Bayer LTD Plan provides long-term disability benefits to a participant if she is "unable to perform the essential duties of [the participant's] regular occupation." The "regular occupation" standard remains the test for continued benefits for the initial six months of long-term disability. After six months of long-term disability benefits, a participant must be "unable to work at any job for which [the participant is] or could become qualified by education, training, or experience" to continue to receive long-term disability benefits. This "any job" standard common in many ERISA disability plans requires a more significant disability than the initial "regular occupation" standard.

2

After twenty-three (23) years of disability, Kemper terminated McCaughan's long-term disability benefits effective September 30, 2003. It notified McCaughan that it had "reviewed [her] claim for continued [long-term disability] benefits and [had] determined that the medical documentation [did] not continue to support [her] claim." AR 130. Specifically, Kemper explained that it had reviewed medical documentation from her treating physicians, Drs. Landay and Axelson, and Ms. Snyder and had also referred her file to two Peer Review Physicians, Drs. Mazal and Mendelssohn, for "Comprehensive Peer Reviews." According to Kemper's letter, the Peer Review Physicians had determined the following: (1) that there was no "documentation of significant wheezing on examination, significant hympoxemia at rest, or any significant derangement in pulmonary function;" (2) that she was "capable of performing activities of daily living;" and (3) that there had not been any "deficits in cognitive or behavioral functioning." AR 131.

Less than one month after her long-term benefits were terminated, on October 24, 2003, McCaughan notified Bayer's ERISA Review Committee of her decision to appeal Kemper's determination that she no longer qualified for long-term disability benefits. In her appeal, McCaughan relied on medical support for her disability provided by Drs. Landay and Axelson.

Bayer's ERISA Review Committee submitted McCaughan's appeal and medical records to Dr. Superfine and Dr. Lawrence Burstein for a "General Peer Review." Following the General Peer Reviews, Bayer's ERISA Review Committee retained independent medical experts, Dr. Faber and Dr. Stuart Burstein. Based on the results of the General Peer Review and the independent reviews conducted by Drs. Faber and Burstein, Bayer denied McCaughan's appeal on May 11, 2004. The notification of denial indicated that the Bayer Corporate and Business Services ERISA Review Committee had met on May 5, 2004 to consider McCaughan's appeal and further:

> noted that [McCaughan] had several physical and mental conditions. However, the Committee determined that there [was] no credible medical evidence that any of these conditions, either alone or together, render[ed McCaughan] unable to perform the essential duties of [her]

        job as a customer service representative."[1]

AR Exhibit C.

    B.    <u>Claims</u>

McCaughan filed her complaint on September 13, 2004. She included several counts related to Bayer's denial of long term disability benefits and alleged failure to provide her with a statement of her pension benefits upon request. In her prayer for relief, she seeks: (1) issuance of a permanent injunction enjoining the defendants from violating the terms of the Bayer Long-Term Disability Plan; (2) a "money judgment" in the amount of $110 per day for the period commencing on April 5, 2004; (3) a "money judgment" for payment of her litigation expenses and attorney fees; (4) litigation costs and expenses; (5) interest on amounts owed; (6) payment in full of any additional amounts that may become due during the pendency of the proceedings; (7) for Bayer to be required to reinstate her into its benefit plans and "provide payment of past benefits and benefit service in the Pension Plan." McCaughan's Complaint at pp. 7-8.

McCaughan bases her claim for disability benefits on Section 502(a)(1)(B) of ERISA; her claim for a declaration of her rights under the Bayer Pension Plan is based on Section 502(a)(1)(B) of ERISA and her claim for statutory penalties on Section 502(c)(1) of ERISA[2].

As an initial matter, Bayer contends that Kemper is a non-fiduciary third party claims administrator and as a result cannot be liable for disability benefits under Section 502(a)(1)(B). Plaintiff, however, has failed to provide the Court with any legal basis for a claim against these

---

[1] There is no explanation in the record for the Committee's use of the "regular occupation" standard in its letter rather than the "any occupation" standard applicable to McCaughan. The regular occupation standard is more favorable to McCaughan so she does not challenge this error.

[2] McCaughan's complaint alleges that she requested information regarding her pension benefits, specifically the credits earned prior to her disability and added during her disability. She claims that the requested information was not provided and failure to provide such information within thirty days requires payment of a statutory penalty.

defendants[3].

As to McCaughan's claim for statutory penalties and for a declaration of her rights under the Bayer Pension Plan, Bayer claims that it did not receive a written request for a statement of pension benefits from McCaughan. However, Bayer's Supplemental Motion for Summary Judgment notes that it sent McCaughan a pension statement on March 9, 2004, pursuant to routine procedure when a vested employee's benefits are terminated. The statement sent on March 9, 2004, is attached to Bayer's Supplemental Motion for Summary Judgment and confirmed that McCaughan had been credited for her pension for the years that she had been disabled. Because the statement was mailed within thirty days of McCaughan's alleged request and because she had been credited for her pension for the length of her disability, Bayer contends that McCaughan's claims for statutory penalties and a declaration of rights under the pension plan are meritless. McCaughan has filed a Declaration in which she states that she did not receive the statement dated March 9, 2004.

With respect to McCaughan's Section 502(a)(1)(B) claim, she contends that Bayer's reliance on medical opinions other than her treating physicians' opinions, coupled with the fact that the medical experts relied on by Bayer "ignored the facts of the records submitted to them and based their opinions upon factually untrue statements" rendered the decision "unsupported by substantial evidence and ... therefore arbitrary and capricious..." McCaughan's Motion for Summary Judgment at 3. In the Brief in Support of her Motion for Summary Judgment, McCaughan outlines the various medical reports provided by her treating physicians and notes that Dr. Mazal concluded that those documents did "not substantiate that claimant is incapable of sendentary work." McCaughan also took offense with Dr. Mazal's recommendation that she could return to work if a "climate controlled work environment" could be provided. McCaughan contends that Dr. Mazal's conclusions "minimize [her] complaints and her history

---

[3] The remaining defendants concede that they are proper party defendants under Section 502(a)(1) but argue that the decision to deny McCaughan continued LTD Benefits was not arbitrary and capricious because it was supported by substantial evidence.

of treatment in reference to hundreds of log entries detailing her symptoms and complaints. Brief in Support of Motion for Summary Judgment at 9, paragraph L. McCaughan contends that her asthma is aggravated by odors and there is "no indication" that odors could be restricted in a workplace.

McCaughan criticizes Dr. Mendelssohn, one of Bayer's psychological experts, because she "did not address" the frequent absenteeism that would be necessitated by McCaughan's frequent high-dose prednisone bursts if she returned to work. McCaughan contends that the absenteeism resulting from her medical treatment, "even from a psychology vantage point ... would render Plaintiff unemployable." Brief in Support of Motion for Summary Judgment at 10, paragraph N. McCaughan also concludes that Dr. Stuart Burstein's psychiatric review, which concluded that she could return to work, was "without merit," because his opinion "ignores claimant's asthma completely." Brief in Support to Motion for Summary Judgment at 11-12 paragraph R.

In addition, McCaughan criticizes Dr. Superfine's report because it "lists multiple records reviewed but comments only on appointments of 2/4/03, 5/5/03 and August 2003 and a letter of Dr. Landay dated 12/4/03." The allegations in McCaughan's brief imply that Dr. Superfine limited his focus to an unreasonably short period of time and a similarly small pool of medical records.

Finally, McCaughan argues that Dr. Faber's report lacks merit because he concluded that none of the office visits from her treating physicians noted wheezing.[4]

### III. STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of

---

[4] Upon review, Dr. Faber's report seems to make a subtle distinction between symptoms that McCaughan reported to her physicians and those that her physician's observed upon presenting for treatment.

law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587.

In reviewing a denial of benefits under an ERISA benefit plan, a Court must first determine whether the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 114-115 (1989). Where the benefit plan gives the administrator or fiduciary authority the discretion to determine eligibility for benefits or to construe the terms of the plan, the denial of benefits is reviewed under the arbitrary and capricious standard. *Id.*; *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437-438 & n.4 (3d Cir. 1997).

Under an "arbitrary and capricious" standard, the administrator's decision "will be overturned only if it is 'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000) (quoting *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir. 1993)) A decision is supported by "substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Daniels v. Anchor Hocking Corp.*, 758 F. Supp. 326, 331 (W.D. Pa. 1991). Moreover, under this narrow scope of review a court is not free to substitute its own judgment for that of the administrator in determining eligibility for plan benefits. *Abnathya v. Hoffman-La, Inc.*, 2 F.3d at 45.

The Third Circuit, however, has applied a heightened standard of review in cases in which the court found a conflict of interest by plan administrators. For example, when an insurance company both funds and administers benefits, "it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review." *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000). In *Pinto*, the Third Circuit specifically distinguished insurance companies that both administer and fund plans from employers who perform those roles. Insurance companies pay plan benefits out of funds that would otherwise be available as profits, creating a direct incentive for them to withhold benefits. *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d at 388. In contrast,

> the typical employer-funded pension plan is set up to be actuarially grounded, with the company making fixed contributions to the pension fund, and a provision requiring that the money paid into the fund may be used only for maintaining the fund and paying out pensions. As we explained in *Abnathya* and *Mitchell*, the employer in such a circumstance "incurs no direct expense as a result of the allowance of benefits, nor does it benefit directly from the denial or discontinuation of benefits."

*Id.* (quoting *Abnathya v. Hoffman-La, Inc*, 2 F.3d at 45 n.5, and *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 n.4 (3d Cir. 1997)).

An employer-fiduciary may be subject to a conflict of interest requiring heightened

scrutiny when its plan is "unfunded," meaning that the employer-fiduciary pays benefits out of operating funds rather than from a separate ERISA trust fund. *See Smathers v. Multi-Tool, Inc.*, 298 F.3d 191, 197-98 (3d Cir. 2002); *Stratton v. E.I. DuPont de Nemours & Co.*, 363 F.3d 250, 254-55 (3d Cir. 2004). A typical employer-funded ERISA benefits plan, however, does not create the sort of conflicts of interest that demand a heightened arbitrary and capricious review. *See, e.g., Bill Gray Enters., Inc. Employee Health & Welfare Plan v. Gourley*, 248 F.3d 206, 216-17 (3d Cir. 2001); *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d at 383; *Abnathya v. Hoffman-La, Inc.*, 2 F.3d at 45 & n.5.

Here, disability benefits under the Bayer Plan are not paid from the company's general operating revenues. The record is clear that Bayer funds a Trust for payment of benefits to plan participants. The Trust is administered by Mellon Bank, N.A. pursuant to a Trust Agreement. Disability benefits under the Plan are paid out of the Trust, which is pre-funded to cover both present and future disability claims. Moreover, Plaintiff has failed to point to any specific facts in the record that would indicate that a heightened standard of review is warranted.

A heightened standard of review of employer-funded plans may be appropriate if a claimant can demonstrate "procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits" can trigger a heightened standard of review. *Kosiba v. Merck & Co.,* 384 F.3d 58, 66 (3d Cir. 2004). There is no evidence of procedural irregularity or bias here. The Court finds that the Plan at issue in this instance is a typical employer-funded ERISA plan subject only to arbitrary and capricious review.

### IV. DISCUSSION

#### A. The Kemper Defendants

ERISA permits suits to recover benefits against the plan as an entity and against the fiduciary of the plan. In defining fiduciary broadly, ERISA provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control

> respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). *See also Smith v. Hartford Ins. Group*, 6 F.3d 131, 141 n.13 (3d Cir 1993). This Court, therefore must determine if Kemper maintained any authority or control over the management of the Plan's assets, management of the Plan in general, or maintained any responsibility over the administration of the plan. *Curcio v. John Hancock Mut. Life Ins. Co.*, 33 F.3d 226, 233 (3d Cir. 1994). If so, then Kemper is a fiduciary under ERISA.

Under the Bayer Plan, Bayer is the Plan Administrator and fiduciary. *See* Tab A, Disability Plan § 8.2. The Plan vests the Plan Administrator with discretion to make final determinations as to any facts necessary or appropriate for any purposes under the Plan, and to interpret the terms and provisions of the Plan and to determine any and all questions arising thereunder. *See* Tab A, Disability Plan § 8.4. Kemper is the Claims Administrator of the LTD Plan. Tab B, Summary Plan Description ("SPD") p. 34. Pursuant to the Plan, after a claim has been initially approved, the Claims Administrator may request proof of continuing disability. Tab B, SPD p. 30. It the participant fails to provide satisfactory evidence on a continuing disability, benefits will be terminated. Tab B, SPD pp. 29, 31.

Kemper has been delegated responsibility to make initial claim benefit determinations under the Bayer LTD Plan. Tab D, Kemper Agreement § 2.D. Kemper however is not a fiduciary under the Plan, and is not responsible for making any final appeals determination. Bayer retains that responsibility. Tab D, Kemper Agreement pp. §§ 2.D, 3.C and 4.E.

Plaintiff has provided no evidence that Kemper maintained any authority or control over the management of the Plan's assets, management of the Plan in general, or that Kemper maintained any responsibility over the administration of the plan. There is no factual dispute, therefore, as to Kemper's status here as a claims processor with no final authority to deny a

10

claim for benefits. Kemper is not a proper party under Section 502(a)(1)(B) of ERISA, and summary judgment will be granted in its favor.

       B.      <u>Bayer's Decision to Deny Benefits</u>

Under the arbitrary and capricious standard, "the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by the evidence or erroneous as a matter of law.'" *Abnathya v. Hoffman LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993). This scope of review is narrow, and "the court is not free to substitute its own judgment for that of the [administrator] in determining eligibility for plan benefits." *Id.* Where, as here, the Plan clearly places the burden on the claimant to submit medical evidence to support eligibility for benefits, Plaintiff must prove she was entitled to, but denied, disability benefits. *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d at 46. Moreover, to determine whether Plaintiff has carried her burden, this Court must look to the record as a whole. *Mitchell v. Eastman Kodak Co.*, 113 F.3d at 440. Under the arbitrary and capricious standard, the "whole" record consists of that evidence that was before the administrator when the decision currently being reviewed was made[5]. *Id.*

Further, there is no presumption of continued disability to a claimant who has previously been awarded benefits under a plan. *See Ellis v. Liberty Life Assuarance Co.*, 394 F.3d 262 (5th Cir. 2004). In *Ellis*, the court specifically stated: "We have found no statutory, regulatory, or jurisprudential authority . . . that would heighten the level of proof needed for a plan fiduciary to determine entitlement or non-entitlement to LTD benefits simply because the fiduciary previously had approved entitlement and paid benefits to the employee in question." *Id.* at 274. The Bayer LTD Plan in fact permits reassessment based on a subsequent examination and does not accord a presumption to continued disability. Moreover, ERISA does not require that the plan fiduciary obtain proof of a substantial change in a recipient's medical

---

[5] To the extent the supplemental medical records filed by Plaintiff were neither filed with, nor considered by, Bayer's ERISA Review Committee, they are not appropriate for consideration by this Court.

11

condition since the initial determination of eligibility. *Id.*

Having reviewed the administrative record for a second time, and giving the Plaintiff every opportunity to meet her burden, the Court finds that the decision of the Bayer Review Committee finding Plaintiff was no longer entitled to LTD benefits was supported by substantial evidence. Bayer conducted a full review of Plaintiff's medical file before concluding she was not disabled from "any job" for which she was qualified. Bayer's determination was based upon no less than six (6) independent medical opinions, three of which related to Plaintiff's pulmonary conditions and three of which related to her mental condition. These medical opinions detail the reasons, based upon Plaintiff's medical records and reports, for the conclusions set forth therein. Moreover, several of the independent medical opinions discuss and reject statements and conclusions submitted by Plaintiff in support of her appeal. The decision to terminate McCaughan's long term benefits was not inconsistent with the weight of the medical information available, and was not arbitrary and capricious.

McCaughan argues the Review Committee did not give adequate weight to the opinion of her treating medical professionals. "Plan administrators are not obliged to accord special deference to the opinions of treating physicians." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). In *Black & Decker*, the Supreme Court stated, "plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. But, . . . courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Id.* at 834. Bayer, therefore, had no obligation to afford special weight to McCaughan's treating physicians.

McCaughan also contends that the medical experts relied on by Bayer "ignored the facts of the records submitted to them and based their opinions upon factually untrue statements."

Further, throughout her Brief[6], Plaintiff contends that the Review Committee relied upon reports of medical reviewers that were "inaccurate and unreasonable." A review of the reports of such medical experts proves McCaughan's contentions to be without merit. Clearly, these reviewing physicians considered Plaintiff's medical records and reports and concluded, contrary to McCaughan's physicians, that she was able to work in a capacity that removed her from the definition of disabled under the Plan.

Plaintiff infers that weight should be given to a 1993 Social Security Administration ("SSA") determination of disability. The decision of the SSA may be considered as a factor in evaluating whether a plan administrator has acted arbitrarily and capriciously in reviewing a plaintif"s claim. *See Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 Fed. Appx. 266, 269 (3d Cir. 2006)(citing *Dorsey v. Provident Life & Accident Ins. Co.*, 167 F. Supp. 2d 846, 856 n.11 (E.D. Pa. 2001)). However, a Social Security award does not in itself indicate that an administrator's decision was arbitrary and capricious, and a plan administrator is not bound by the SSA decision. *See Marciniak v. Prudential Fin. Ins. Co. of Am., supra.*; *see also Russell v. Paul Revere Life Ins. Co.*, 148 F. Supp. 2d 392, 409 (D. Del. 2001) ("[A] plan administrator's decision on ERISA disability that differs from that of the SSA is not arbitrary and capricious provided it is reasonable and supported by substantial evidence.") Here, Bayer's determination was reasonably grounded on substantial evidence.

Finally, McCaughan makes an argument based on adverse inferences she contends this Court must draw from records that are allegedly missing and/or were intentionally not included in the record. The Court finds no merit in such contention, and declines to address the matter further.

The Court therefore finds substantial evidence in the record to support the decision to deny McCaughan benefits under Bayer's LTD Plan. Defendants' motion for summary

---

[6] It must be noted that Plaintiff's Brief, in both instances, consists of a review of medical documents filed with the Court, with commentary regarding such documents, and is conspicuously bereft of any legal authority in support of her position.

judgment will be granted.

### C. Claim for Statutory Penalties and Claim against the Plan

As set forth above, McCaughan has made a claim for statutory penalties for Bayer's failure to provide requested pension information within thirty days, and for a declaration of her rights under the Bayer Pension Plan. Bayer claims that it did not receive a written request for a statement of pension benefits from McCaughan. However, Bayer's Supplemental Motion for Summary Judgment notes that it sent McCaughan a pension statement on March 9, 2004, pursuant to routine procedure when a vested employee's benefits are terminated. The statement sent on March 9, 2004, is attached to Bayer's Supplemental Motion for Summary Judgment and confirmed that McCaughan had been credited for her pension for the years that she had been disabled. Because the uncontradicted evidence of record indicates that the statement was mailed within thirty days of McCaughan's alleged request and because she had been credited for her pension for the length of her disability, the Court finds that McCaughan's claims for statutory penalties and a declaration of rights under the pension plan are without merit.

## V. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment will granted and McCaughan's motion for summary judgment will be denied.

An appropriate order will follow.

s/ David Stewart Cercone<br>
David Stewart Cercone<br>
United States District Judge

cc:   Stephen J. O'Brien, Esquire
      71 McMurray Road
      Suite 205
      Pittsburgh, PA 15241

John J. Myers, Esquire
Eckert Seamans Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA 15219

William J. Klemick, Esquire
Bayer Corporate and Business Services LLC
100 Bayer Road (Omega)
Pittsburgh, PA 15205-9741